IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE HEATH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 4783 |
| | ) |
| UNISYS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Unisys Corporation's (UC) motion to compel arbitration and to stay judicial proceedings. For the reasons stated below, we grant the motion to compel arbitration.

**BACKGROUND**

Plaintiff Diane Heath (Heath) alleges that in July 2005, she was hired by UC as a Portfolio Sales Executive (PSE). Heath contends that she was told that her compensation would be a base salary plus commissions based on sales, and that the compensation was defined in UC's 2007 Sales Executive Compensation Plans (Compensation Plans). Heath claims that she worked as the lead PSE in UC's efforts

1

to renew an ongoing multi-million dollar contract with the City of Chicago (City Contract Project). In February 2007, after working on the City Contract Project for approximately nine months, UC allegedly transferred Heath from the City Contract Project. Heath claims that she was unfairly denied commissions for the anticipated renewal. After the transfer, Heath allegedly appealed the decision to her manager and her appeal was allegedly ignored. Heath contends that following her transfer from the City Contract Project, she was left with only one potential client to which UC had not sold an account since 1997. According to Heath, UC tried to force her to resign and ultimately terminated her employment. Heath brought the instant action in Illinois state court and the case was removed to federal court. Heath includes in her complaint a breach of contract claim seeking unpaid commissions (Count I), a breach of contract claim seeking unpaid expenses (Count II), an Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1 *et seq.*, claim based on unpaid commissions (Count III), an IWPCA claim based on unpaid expenses (Count IV), and a promissory estoppel claim (Count V). UC now moves to compel arbitration and to stay the instant proceedings.

**LEGAL STANDARD**

Pursuant to 9 U.S.C. § 2 of the Federal Arbitration Act (FAA), "[a] written provision in any maritime transaction or a contract evidencing a transaction

2

involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* A court should "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "[w]here the arbitration clause is broad, there is a presumption in favor of arbitrability." *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Int'l. Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008)(internal quotations omitted)(stating that "[a]ny ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration"); *see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)(stating that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). In general, to determine whether parties agreed to arbitrate a dispute, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

3

**DISCUSSION**

UC argues that under the terms of the Compensation Plans, Heath has agreed to arbitrate disputes such as the dispute presented in the instant action. Section 12 of the Compensation Plans (Section 12) includes a dispute resolution procedure that states the following:

> The procedures outlined below are designed to provide for a prompt and thorough review of *all disputes concerning the crediting, advancing, debiting, payment or charge-back of all items of commission* or incentive compensation included in this Plan. The disputing party and the Company agree that they will use and exhaust these procedures first in an effort to resolve any dispute covered by this Plan, *before resorting to any other tribunal, court or administrative agency*.
>
> The disputing party and the Company agree *this procedure is mandatory and a prerequisite to any other remedy available concerning the recovery of commission or incentive compensation provided for by this Plan.* Only after the exhaustion of the procedures outlined here may any further relief be pursued by either party.

(C. Plan Sec. 12)(emphasis added).

I. Scope of Arbitration Clause

Heath contends that the dispute in the instant action is outside of the scope of the arbitration clause in Section 12. A party can be forced to submit to arbitration only on "those matters that she has agreed to submit to arbitration." *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005). The main focus of Heath's

complaint is the failure by UC to pay Heath the commissions that Heath believes she is owed for the City Contract Project. (Compl. Par. 12, 44, 50, 59, 77-86, 95-100). The Compensation Plans provide in a clear and unambiguous manner that Section 12 and its arbitration provision covers "all disputes concerning the crediting, advancing, debiting, payment or charge-back of all items of commission" and that the "procedure is mandatory and a prerequisite to any other remedy available concerning the recovery of commission or incentive compensation . . . ." (C. Plan Sec. 12); *see also SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 372 (7th Cir. 2009)(stating that "[u]nder Illinois's 'four corners' rule, if a written agreement is unambiguous, then the scope of the parties' obligations must be determined from the contract language without reference to extrinsic evidence")(citing *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)). Thus, the Compensation Plans on their face cover the commission dispute presented in this case. *See United Steel*, 531 F.3d at 536 ("[w]here the arbitration clause is broad, there is a presumption in favor of arbitrability").

Heath argues that Section 12 does not apply to the instant dispute since she could not properly complete the internal grievance process. Section 12 includes a three-step internal grievance process that should be completed prior to the final step, which is arbitration. (C. Plan Sec. 12). Heath argues that the Compensation Plans do not provide a means for an employee facing termination or for an employee with

5

prospective commission disputes to participate in the internal grievance process. However, issues such as how the internal grievance procedures operate in certain circumstances and the interpretation of the terms in the Compensation Plans are issues for the arbitrator to decide. Such arguments do not negate the fact that the arbitration provision in Section 12 provides that "all" disputes concerning commissions are to be resolved in arbitration before seeking court intervention. (C. Plan Sec. 12). It is true that an arbitration clause must allow the parties a fair hearing on the dispute. *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997)(stating that "[i]t is clear that an arbitrator must provide a fundamentally fair hearing"). In this matter, there is no indication that Heath will not be accorded a fair hearing before the prospective arbitrator.

Health also contends that the fact that she cannot properly complete the internal grievance process at UC is important since the process is a prerequisite to arbitration in Section 12. Even if that were true, Heath has not shown why she would be at a disadvantage in regard to proceeding in arbitration. UC has not indicated that it will seek to bar Heath from relief based on a failure to exhaust the internal grievance process and UC is moving to send the dispute to arbitration. Thus, the record indicates that the dispute presented in this action concerning commissions is within the scope of Section 12.

II. Waiver

Heath argues that UC waived its right to seek arbitration by delaying in moving to compel arbitration. Heath contends that since UC chose to remove this case to federal court rather than seeking to compel arbitration in the state court proceedings, UC waived its right to arbitration. Heath cites *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995), for the proposition that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Id.*; (Ans. 8). In *Cabinetree*, the action was filed in state court, and removed shortly thereafter. 50 F.3d at 389. The defendants in *Cabinetree* did not seek to stay the action pending arbitration until after discovery began, when thousands of documents had already been exchanged, and a trial date had been set. *Id.* Unlike in *Cabinetree*, in the instant action there was no significant delay by UC in moving to compel arbitration. UC moved to compel arbitration approximately one month after removing this case to federal court. Furthermore, there has not been any discovery ordered in this case and no other motions have been filed or ruled upon in this case.

In addition, in *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557 (7th Cir. 2008), the Seventh Circuit further clarified the holding in *Cabinetree*, stating that the Court "has not found waiver where removal was the only action taken by the party against whom the waiver was to be enforced." *Id.* at 562 (finding that

the defendant acted in a timely manner after removal and did not waive the right to arbitration). As in *Halim*, upon removal, UC promptly moved to compel arbitration before discovery began and before any other issues were resolved in this court. Therefore, we find that UC has not waived its right to seek arbitration.

III. Lack of Mutuality

Heath argues that the record indicates that Defendants expressed a desire not to be bound by Section 12 and that the Compensation Plans were not valid contracts due to lack of mutuality. The Seventh Circuit has indicated that "'a court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud.'" *James*, 417 F.3d at 680 (quoting *Sweet Dreams Unlimited v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 n.4 (7th Cir. 1993)). In this case, although Heath is not alleging fraud, she is alleging a defect in the formation of the Compensation Plans. Heath's argument that there was no valid contract between the parties is inconsistent with her breach of contract claims. Heath premises her claims for commissions upon the contract that she now argues in the alternative was never validly formed. Thus, if Heath's lack of mutuality argument were to prevail, her breach of contract claims would fail. The Seventh Circuit has indicated that a plaintiff "cannot claim, on the one hand, that a valid contract obligates [the

8

defendant] and, on the other hand, argue that no contract binds" the plaintiff. *James*, 417 F.3d at 678. The Court indicated that a plaintiff "cannot pick and choose among the terms" of the contract and that the terms of a contract "stand or fall in their entirety." *Id.*

In regard to Heath's lack of mutuality argument, the argument consists of a few cursory sentences. Heath fails to point to portions of the record that create any real dispute concerning the validity of the Compensation Plans. Heath contends, for example, that an employee of UC stated that Heath was "not getting a dime in commissions . . . ." (Compl. Par. 50). However, even if such a statement was made, it would not be sufficient to plausibly suggest that UC never intended at the formation of the Compensation Plans to be bound by the agreement. Heath also points to a scrivener's error in one version of the Compensation Plans, which again is insufficient to indicate a lack of mutuality. Thus, Heath has not presented a sufficient basis to indicate that Section 12 was invalid due to a lack of mutuality. Section 12 clearly indicates that the parties agreed to seek a final resolution of disputes concerning commissions in arbitration before seeking relief in any court. Therefore, based on the above, we grant UC's motion to compel arbitration.

## CONCLUSION

Based on the foregoing analysis, we grant UC's motion to compel arbitration.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   December 4, 2009